

IN THE COURT OF CRIMINAL APPEALS
OF TEXAS

NO. WR-84,073-01

EX PARTE MARTIN PENA, Applicant

ON APPLICATION FOR WRIT OF HABEAS CORPUS
IN CAUSE NO. 1379020-A IN THE 184TH DISTRICT COURT
HARRIS COUNTY

WALKER, J., filed a dissenting opinion in which ALCALA and RICHARDSON, JJ., joined.

D I S S E N T I N G   O P I N I O N

I agree with Judge Richardson's dissenting opinion and join it. However, I feel compelled

to further explore the matters raised by Applicant. His application for writ of habeas corpus relief

raises two distinct claims: Ground One, "Involuntary plea (due to police misconduct)" and Ground

Two, "Failure to disclose exculpatory evidence of police misconduct at the time of plea (under *Kyles*

*v. Whitley* and *Brady v. Maryland*), in violation of Martin Pena's right to due process."

**BRADY VIOLATION CLAIM**

I shall first address Ground Two, the claim of a due process violation due to *Brady* error.

*Brady v. Maryland*, 373 U.S. 83, 87 (1963), held that the prosecution violates due process when it

suppresses evidence in its possession which is favorable to the accused where the evidence is material to guilt or punishment. Impeachment, as well as exculpatory, evidence is included within the purview of the *Brady* rule. *United States v. Bagley*, 473 U.S. 667, 676 (1985). However, the United States Supreme Court has held that while *Brady* requires exculpatory evidence to be disclosed prior to a plea, evidence that is merely impeachment evidence does not have to be disclosed prior to a plea. *United States v. Ruiz*, 536 U.S. 622, 625, 633 (2002). But in this case, I believe that the evidence of Officer Carrion's extreme misconduct is exculpatory as well as impeaching. I acknowledge that the evidence at issue is the type of evidence that would normally be classified as impeachment evidence. However, I feel certain that the evidence at issue, while certainly impeaching, is effectually exculpatory as well as being actually exculpatory.

The evidence at issue centers around the illegal conduct of Officer Carrion. Officer Carrion was one of the officers that made the traffic stop of Applicant. Officer Carrion was working with the Cartel. He was directly involved in the drug trafficking in which Applicant was arrested and convicted. Carrion stole the cocaine that was to be placed in the vehicle driven by Applicant, and replaced it with an ice chest full of sheetrock that had less than one gram of cocaine sprinkled on top. He then stopped and arrested Applicant, charged him with possessing cocaine, and seized the cocaine and sheetrock so the Cartel would not know that Carrion stole the actual cocaine. These facts illustrate the perfect scenario in which impeachment evidence is so impeaching that it is effectually exculpatory. If these facts had been presented to a jury, it would be likely that the jury would not have believed any of Officer Carrion's testimony, or even the testimony of the other officer involved in the traffic stop. A reasonable jury could easily conclude that it should not find any of the State's evidence credible after realizing that Officer Carrion was actually working for the drug Cartel.

"Exculpatory evidence is that which may justify, excuse, or clear the defendant from alleged guilt, and impeachment evidence is that which disputes, disparages, denies, or contradicts other evidence." *Jose Luis Pena v. State*, 353 S.W.3d 797, 811-12 (Tex. Crim. App. 2011). Evidence that the arresting officer was not only working for the drug cartel that was trafficking the cocaine in Applicant's car, but had also stolen the actual cocaine and replaced it with sheetrock, is certainly enough to make a reasonable jury believe the defendant is not the guilty party and that he should be cleared of any wrongdoing. The evidence of Officer Carrion's misconduct is not only impeaching, but it is also very much effectually exculpatory. Therefore, *Ruiz*, which holds that evidence which is merely impeachment evidence need not be disclosed prior to a plea, is not applicable in this case.

While the evidence of Officer Carrion's misconduct is impeachment evidence that is effectually exculpatory, it is also actually exculpatory because it showed that the substance was actually less than one gram of cocaine sprinkled on top of 26,000 grams of sheetrock when Applicant was charged with possession of over 400 grams of cocaine. While this will be explored more thoroughly in the involuntary plea context, the argument is basically that since there is a reasonable argument that, under Texas law, the substance possessed by Applicant was less than one gram of cocaine, the suppressed evidence could have certainly been enough to create reasonable doubt as to Applicant's guilt of the alleged offense of possession of 400 or more grams of cocaine. Again, *Ruiz*, which holds that evidence which is merely impeachment evidence need not be disclosed prior to a plea, is not applicable in this case.

Also, under *Brady* jurisprudence, the prosecution includes "members of law enforcement connected to the investigation and prosecution of the case." *Ex parte Miles*, 359 S.W.3d 647, 665 (Tex. Crim. App. 2012). And, the Supreme Court has held that *Brady* suppression occurs when the

government fails to turn over evidence that is known only to police and not the prosecutor.

*Youngblood v. West Virginia*, 547 U.S. 867, 869-70 (2006).

Pointedly, the Supreme Court stated:

> In *Brady* this Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." [*Brady v. Maryland*,] 373 U.S., at 87, 83 S.Ct. 1194. We have since held that the duty to disclose such evidence is applicable even though there has been no request by the accused, *United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), and that the duty encompasses impeachment evidence as well as exculpatory evidence, *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Such evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.*, at 682, 105 S.Ct. 3375; see also *Kyles v. Whitley*, 514 U.S. 419, 433-434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Moreover, the rule encompasses evidence "known only to police investigators and not to the prosecutor." *Id.*, at 438, 115 S.Ct. 1555. In order to comply with *Brady*, therefore, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police." *Kyles*, 514 U.S., at 437, 115 S.Ct. 1555.

> \* \* \*

> [S]trictly speaking, there is never a real "*Brady* violation" unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict. There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.

*Strickler v. Greene*, 527 U.S. 263, 280-82 (1999). Regarding the materiality inquiry, "the question is whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Id.* at 289-90, quoting *Kyles*, 514 U.S. at 434.

In *Ex parte Castellano*, 863 S.W.2d 476, 485 (Tex. Crim. App. 1993), we recognized that a police officer who collaborated with another witness to fabricate evidence against the defendant

was acting under color of law, and we held that the officer's knowledge of such evidence was imputable to the prosecution. In this case, as one of the arresting officers, Carrion was part of the prosecution team; thus, the State had a duty to disclose exculpatory evidence known by Carrion. Furthermore, the State agrees that Officer "Carrion's misconduct is imputed to the prosecution." State's Brief at 7, 13.

As discussed above, there are three components of a true *Brady* violation: 1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; 2) that evidence must have been suppressed by the State, either willfully or inadvertently; and 3) prejudice must have ensued. As discussed, the first component of the *Brady* claim in this case is met because the evidence was both impeaching and exculpatory. The second component is met because the effectually exculpatory evidence, while not known by the prosecutors at the time of the plea, was known by Officer Carrion who was an arm of the prosecution team for *Brady* purposes. The third component of a true *Brady* violation is whether the defendant was prejudiced. I believe the defendant was certainly prejudiced.

The standard of prejudice that must be satisfied in order to obtain relief under a Due Process *Brady* claim is that there is a reasonable probability that the result of the trial would have been different if the suppressed evidence had been disclosed to the defense. *Strickler*, 527 U.S. at 289. Quoting *Kyles*, the Supreme Court pointed out that "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.* at 289-90. In my view, *Brady* error is shown because the suppressed evidence of Officer Carrion's extreme misconduct was favorable to Applicant as exculpatory as well as impeachment evidence,

prejudice ensued in that a trial resulted in a verdict not worthy of confidence, and that there is a very reasonable probability that the result of the proceeding would have been different had the evidence been disclosed. In my opinion, a verdict predicated on the extreme misconduct of Officer Carrion could not be a verdict worthy of confidence. I also believe that the verdict would have certainly been different had the misconduct of Officer Carrion been disclosed to Applicant.

The first reason that it is apparent that the result would have been different if the misconduct had been disclosed, is that the prosecution would certainly have offered a much lower sentence than the fifteen years offered, had they known that the arresting officer was involved in the drug trafficking scheme, and that the actual amount of cocaine was less than one gram. I can't imagine any reasonable prosecutor being willing to go to trial with these extremely detrimental facts. After all, as Judge Richardson points out, the prosecutor's office had expressed concern that Applicant should have been charged with possessing less than one gram.

The second reason that the result would have been different is that Applicant did not possess twenty-six kilos of cocaine, but actually possessed twenty-six kilos of sheetrock sprinkled with less than one gram of cocaine. As Applicant asserts, it appears certain that he would not have pled guilty to the alleged offense and accepted a fifteen year sentence had the evidence of Officer Carrion's misconduct been disclosed to him. There is no way he would have pled guilty to possessing 400 or more grams of cocaine when in reality he possessed only a trace amount of cocaine which had been sprinkled on top of sheetrock. In the absence of the suppressed evidence of Officer Carrion's misconduct, it is evident that Applicant did not receive a fair trial, i.e., a trial resulting in a verdict worthy of confidence. Based upon the suppressed evidence, indisputably Applicant possessed a large amount of sheetrock with only a trace amount of cocaine sprinkled on top, while he was

convicted of possessing 400 or more grams of cocaine. In my view, such a verdict is not worthy of confidence. A conviction based on these facts does not resemble a conviction in which an individual was afforded due process of law.

## INVOLUNTARY PLEA CLAIM

Applicant asserts that his plea was involuntary because of the suppressed evidence of Officer Carrion's misconduct. In my view, Applicant's plea cannot be deemed to be knowing and voluntary when he was not made aware of Officer Carrion's illegal activities.

A guilty plea must be entered knowingly and voluntarily, and cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts; thus, the defendant must have sufficient awareness of the relevant circumstances. *Ex parte Mable*, 443 S.W.3d 129, 131 (Tex. Crim. App. 2014). "The standard is whether the plea is a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id.*

As in a *Brady* claim, an involuntary plea claim encompasses the element of materiality. "In the context of a guilty plea, materiality affects the voluntariness of the plea, and the voluntariness of the plea affects whether the information that was considered by the defendant in making a decision to plead guilty was material." *Ex parte Barnaby*, 475 S.W.3d 316, 325 (Tex. Crim. App. 2015). In *Barnaby*, we discussed materiality in the context of a plea agreement. We held that "the materiality of false evidence is measured by what impact that false evidence had on the defendant's decision to plead guilty." *Barnaby*, 475 S.W.3d at 327. Although the instant case arguably involves undisclosed, rather than false, evidence, in pleading guilty Applicant was unaware of the undisclosed evidence just as Barnaby was unaware of the false evidence when he made his plea. So the analysis should be applicable whether the case involves undisclosed or false evidence. The materiality

determination was made based upon whether Barnaby, knowing the falsity of the evidence, still would have pled guilty or would have insisted upon going to trial. If he would have chosen trial, the false evidence would have been material. *Id.* at 325-26.

Applicant asserts that, had he known about the misconduct of Officer Carrion, he certainly would not have entered the plea of guilty and accepted the fifteen year sentence, but instead would have filed a motion to suppress that would have been granted. The majority may be correct in the assertion that the motion would not have been granted. However, whether he was mistaken about the probable outcome of a suppression hearing has no bearing on whether he would have accepted the plea. If he would have rejected the plea because of a mistaken belief, he still would have rejected the plea. A plea rejection in favor of a trial is all it takes to meet the materiality requirement. Even had Applicant not made the above assertion, it still would be very obvious that he would not have accepted a fifteen year sentence had he been aware that the arresting officer was actually working with the drug Cartel, had stolen the actual cocaine from the Cartel, and had played a significant role in the drug trafficking scheme. Facts like these fulfill a criminal defense attorney's dream. A case like this is as close to a slam dunk not guilty as any criminal defense attorney can imagine. Any good trial attorney would have advised Applicant to reject the fifteen year offer had he known about Officer Carrion's egregious misconduct. If you add to the misconduct of Officer Carrion, the fact that Applicant actually possessed less than one gram of cocaine sprinkled on top of 26,000 grams of sheetrock, the facts actually escalate far beyond any criminal defense attorney's dream of ideal trial facts. I cannot imagine any competent criminal defense attorney advising Applicant to accept the fifteen year sentence. The suppressed evidence deprived Applicant of critical circumstances relevant to his decision to make the plea agreement.

While this case is not a sufficiency case and the question as to whether the Health and Safety Code allows for a conviction for over 400 grams of cocaine when there is actually less than one gram of cocaine sprinkled over 26,000 grams of sheetrock is not the central issue in this case, and is not even dispositive of the actual issues, it is relevant to the question of whether the plea was knowing and voluntary. Therefore, an analysis of the statute is warranted.

Applicant was convicted of the offense of possessing with intent to deliver cocaine, weighing at least 400 grams by aggregate weight, including any adulterants and dilutants. Conversely, as the majority opinion points out, the substance which Applicant was convicted of possessing contained only trace amounts of cocaine. It was and is a disputed question whether the non-cocaine remainder of that substance was properly included as adulterants or dilutants in the aggregate weight of approximately 26,000 grams. Even so, had Applicant known about the evidence of Officer Carrion's criminal acts of replacing the trafficker's cocaine with sheetrock which had trace amounts of cocaine sprinkled on top, Applicant would have had evidence that could have vindicated him of the alleged possession of approximately 26,000 grams. Possession of such a lesser quantity had a much lower punishment range, i.e., possession of such a trace amount of less than one gram is a state jail felony with such state jail punishments, which are significantly less than the punishments for possessing 400 grams or more. State jail felony punishment range is confinement in a state jail for not more than two years or less than 180 days and a fine not to exceed $10,000, while punishment for possessing with intent to deliver 400 grams or more of cocaine is imprisonment for life or a term not more than 99 years or less than 15 years, and a fine not to exceed $250,000. TEX. PENAL CODE ANN. § 12.35; TEX. HEALTH & SAFETY CODE ANN. § 481.112(f).

An adulterant or dilutant is "any material that increases the bulk or quantity of a controlled

substance, regardless of its effect on the chemical activity of the controlled substance." TEX. HEALTH & SAFETY CODE ANN. § 481.002(49). I recognize that in the evidence sufficiency context we have said, "The literal meaning of the legislature's adulterant and dilutant definition is that any substance that is *added to* or *mixed with* a controlled substance, regardless of when, how, or why the substance was added, may be added to the aggregate weight of the controlled substance as an adulterant or dilutant." *Seals v. State*, 187 S.W.3d 417, 420 (Tex. Crim. App. 2005) (emphasis added). However, in my opinion, when Officer Carrion sprinkled the cocaine on top of the sheetrock, the bulk or quantity of the cocaine was not increased. The result was still a small amount of cocaine sprinkled on top of a large quantity of sheetrock. Furthermore, sprinkling the sheetrock with cocaine did not constitute adding the sheetrock to the cocaine as would be required by the language in *Seals*. Conversely, the cocaine was added to the sheetrock. Also, there is no evidence that the sheetrock and cocaine were mixed together, as is required by the language in *Seals*. Therefore, the sprinkling of cocaine on top of the sheetrock does not fit within the language of the statute or the language in *Seals*, and it does not miraculously transform 26,000 grams of sheetrock sprinkled with less than one gram of cocaine into 26,001 grams of cocaine. The result of Carrion's sprinkling cocaine on the sheetrock was still a lot of sheetrock with a small amount of cocaine sprinkled on top. Even so, this case does not involve a claim of insufficient evidence. Rather, Applicant's due process and knowing plea voluntariness rights were infringed upon by having made his plea to the offense of possessing 400 or more grams of cocaine when members of the prosecution team, i.e., arresting Officer Carrion, knew that the substance possessed contained only a "sprinkling" of cocaine. And as the cocaine was sprinkled onto the sheetrock, it was certainly reasonably arguable that the sheetrock was not *added to* or *mixed with* the cocaine, but rather the sprinkled cocaine was added to the sheetrock. The fact

that there is a reasonable argument that the substance possessed by Applicant was less than one gram of cocaine could certainly be enough to create reasonable doubt as to Applicant's guilt of the alleged offense of possession of 400 or more grams, and the evidence should have been disclosed prior to the plea for the plea to have been truly knowing and voluntary. It must be noted, that this analysis is independent of the *Brady* analysis. In a knowing and voluntary plea claim, it is irrelevant whether the evidence is exculpatory or merely impeachment evidence.

I would also add that applying the language in *Seals* to conclude, as the majority opinion does, that Applicant was in possession of 26,000 grams of cocaine leads to absurd results. Applying that logic would mean that if a person was loading a dump truck with sand, and decided to sprinkle his small baggie of cocaine on top of the sand, he would then be guilty of possessing a dump truck load of cocaine. This cannot be the law in Texas, and I agree with Judge Richardson that it is absurd to conclude that our Legislature intended such a result.

As discussed above, the undisclosed evidence exculpating Applicant of possessing approximately 26,000 grams would have resulted in a significantly lower penalty range, with state jail rather than prison confinement. Had the evidence been disclosed, Applicant assuredly would not have pled guilty and accepted a fifteen year sentence when the disclosed evidence would have revealed he was potentially only guilty of a state jail felony offense with a maximum sentence of two years confinement in state jail. Applicant would not have pled guilty to the alleged offense and instead would have gone to trial had the State insisted upon prosecuting such a trial, which in this case seems extremely unlikely. After all, as Judge Richardson points out, the prosecutor's office had expressed concern that Applicant should have been charged with possessing less than one gram. Thus, there is a reasonable probability the result of the proceeding would have been different, i.e.,

it undermines confidence in the outcome, had the undisclosed evidence been disclosed. And without knowledge of the suppressed evidence, Applicant's decision to plead guilty to the alleged offense was not knowing and voluntary, as he was unaware of the critical relevant circumstances of the actual cocaine amount.

Again, Applicant raised two separate and distinct claims in his writ of habeas corpus. I have addressed each claim separately, and believe that he is entitled to relief under either claim.

With these comments, I respectfully dissent and join Judge Richardson's dissenting opinion.


Filed: November 15, 2017
Do not publish