

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-93,824-01

### EX PARTE SHANEA LYNN REEDER, Applicant

## ON APPLICATION FOR A WRIT OF HABEAS CORPUS IN CAUSE NO. 5427A IN THE 31ST JUDICIAL DISTRICT COURT WHEELER COUNTY

**KELLER, P.J., filed a concurring opinion.**

I agree with granting relief, but I have three concerns about what the Court says in this case. First, the Court grants relief on a claim—involuntary plea—that Applicant did not raise. The claim Applicant did raise, and which does have merit, was that his conviction and punishment are not authorized by law. Second, the Court suggests that the rule of lenity would apply if the statutes at issue were ambiguous, but there is some reason to think the rule of lenity does not apply to the Penal Code and the Code of Criminal Procedure, and we should just stand on the statutes being unambiguous. Finally, the Court extends *Ex parte Mable*[1] to facts that differ significantly from

---

[1] 443 S.W.3d 129 (Tex. Crim. App. 2016).

*Mable* and for which that decision seems ill-suited. And to find a plea involuntary due to Applicant's lack of awareness about the law, we would need information about what Applicant knew or was told, and there is no such information in this record.

If I were to address an involuntary plea claim, and if it were shown that counsel did not explain to Applicant that the State's charge against him was or might be improper, I would hold that our prior decision in *Ex parte Smith*[2] was wrong to hold that the law was unsettled and resulted in a distortion in our jurisprudence that prevented Applicant from raising what should have been a valid ineffective assistance claim. That would qualify as a "breakdown in the system," which we would be authorized to fix. But a remand would be required for that. I see no reason to do that when Applicant is not raising an involuntary-plea claim, and the claim he is raising is meritorious.

## 1. The Claim Before Us

Applicant did not raise an involuntary-plea claim. His only ground for relief states: "Reeder's five (5) year prison sentence pursuant to the plea bargain agreement on the unlawful possession of a firearm by a felon charge is illegal." On the form, Applicant says that the alleged prior conviction was in fact a deferred adjudication that had not been revoked at the time he possessed the firearm. In his supporting memorandum, Applicant says he "was not a felon" because his deferred adjudication had not been revoked, and therefore the five year sentence was "not authorized by law."

Pro se habeas applications are to be construed liberally, but this Court "may not create claims that the Court *sua sponte* believes meritorious when they are not arguably present in an applicant's

---

[2] 296 S.W.3d 78 (Tex. Crim. App. 2009).

pleadings."[3] An involuntary-plea claim is not even arguably present in Applicant's claim that the sentence is illegal. But Applicant's illegal-sentence claim can be liberally construed to challenge both the conviction and sentence as being unauthorized by law because the reason given for the illegality is that Applicant was not a felon, and so an element of the offense is lacking.

The State's information[4] alleges the conviction used to make Applicant a felon as cause number 5504 in the 31st District Court of Wheeler County, for the offense of manufacture or delivery of a controlled substance on April 13, 2017. Court records indisputably establish that this cause number resulted in a deferred adjudication that was not revoked at the time Applicant possessed the firearm. As the Court explains, an unrevoked deferred adjudication does not count as a conviction for purposes of the offense with which Applicant was charged. Although the information appears on its face to allege an offense—because it *says* that Applicant was convicted of a felony in cause number 5504—if we read the information in light of the court records in cause number 5504 (which, incidentally, is in the same court), then the information does not allege a valid offense.

If Applicant had a felony conviction at the time he possessed the firearm—i.e., a conviction other than the deferred-adjudication case cited in the information—then we would hold the information's failure to cite the proper conviction to be harmless on habeas review.[5] In his dissenting opinion, Judge Yeary expresses concern that the record might not substantiate the claim

---

[3] *Ex parte Carter*, 521 S.W.3d 344, 350 (Tex. Crim. App. 2017).

[4] Applicant waived indictment.

[5] *See Ex parte Rodgers*, 598 S.W.3d 262, 264 (Tex. Crim. App. 2020) (Invalidity of one of the jurisdictional prior convictions in a felony DWI indictment was harmless if there existed another usable prior conviction.).

that Applicant had no prior felony convictions. But I am satisfied from this record that Applicant

did not have a felony conviction at the time he possessed the firearm.

In its findings, the habeas court said:

> Defendant *was not a convicted felon* on the date of his arrest for Unlawful Possession
> of Firearm by Felon as charged and convicted in Cause Number 5427, styled The
> State of Texas v. Shanea Lynn Reeder.[6]

While the finding might be inartfully phrased, it does say that Applicant was not a convicted felon.

And the record supports the finding. In an affidavit, the prosecutor said:

> After examining *the criminal history* for Shanea Lynn Reeder, what appears to be a
> conviction in Cause Number 5054 was in truth and in-fact a probation "sentence
> modification ...["] Therefore. Shanca Lynn Reeder *was not a convicted felon* at the
> time of his plea in cause number 5427.[7]

Also, the charging instrument for the controlled-substance offense[8] did not allege any prior

convictions for enhancement purposes, and Applicant discussed with the trial judge during his plea

to that offense a prior probation for misdemeanor DWI five years earlier that had been revoked. And

Applicant was on deferred adjudication for the controlled substance offense until he was adjudicated

on the same day he was convicted of the firearm offense. So the record sufficiently establishes the

absence of any felony convictions.

The problem in this case is what constitutional theory to grant relief on. It does not seem to

neatly fit recognized theories, but it seems evident that Applicant ought to get relief, which might

be why the Court raises a novel involuntary-plea claim. But I agree with Judge Yeary that an

---

[6] Emphasis added.

[7] Dots in original. Bracketed material and emphasis added.

[8] It was also an information.

"absolute innocence" claim would suffice, where we would dispense with the requirement of newly discovered or newly available evidence.

This sort of claim differs from an "actual innocence" claim qualitatively and not merely as a matter of degree. In an "actual innocence" scenario, the conduct the State charges the defendant with is an offense, but the defendant later claims that newly discovered or newly available evidence shows that he did not engage in that conduct. New evidence can show that a defendant did not engage in the conduct either because someone else did or because the conduct did not occur at all. For example, if the State alleges that the defendant committed sexual assault, that would be an offense.[9] New DNA evidence could prove that a different person was the one who committed the offense (and the defendant was misidentified),[10] or a new credible recantation from the alleged victim could show that no sexual assault took place.[11] A key point in the "actual innocence" situation is that it is not necessary for the State to have made any sort of mistake.[12] New evidence could fatally undermine what the State had every reason to think was a valid prosecution at the time. And that is at least part of the reason why there has to be "new" evidence to support an "actual innocence" claim.

But in an "absolute innocence" scenario, the conduct the State charges the defendant with is not an offense. This happens when the State misconstrues a statute to extend to conduct or other

---

[9] *See* TEX. PENAL CODE § 22.011(a)(1)(A).

[10] *See Ex parte Kussmaul*, 548 S.W.3d 606, 609 (Tex. Crim. App. 2018).

[11] *See Ex parte Thompson*, 153 S.W.3d 416 (Tex. Crim. App. 2005).

[12] *Ex parte Harleston*, 431 S.W.3d 67, 70 (Tex. Crim. App. 2014) ("[A]n applicant alleging a *Herrera* [actual innocence] claim is directly attacking the propriety of his conviction, although the applicant does not dispute that he received an error-free trial.").

facts that the statute does not cover[13] or makes a factual mistake about what a court record shows (e.g, about whether an entry or document shows an actual prior conviction).[14] When the conduct the State charges is not an offense, the State has necessarily made a mistake. The State bears responsibility for that mistake, even if it was reasonable at the time (e.g., relying on a court decision misconstruing the statute). Because an "absolute innocence" claim necessarily involves a mistake in charging the offense itself, the convicted person need not show something "new" to assert a valid claim for relief.[15] But if the claim is based on an invalid allegation of a prior conviction, the convicted person would have to show that another suitable prior conviction (one that would satisfy the statutory requirement if it had been pled) does not exist.[16] Otherwise, he would not have truly shown that he was not guilty of the offense.

---

[13] *See e.g., State v. Hunter*, 624 S.W.3d 589, 589 (Tex. Crim. App. 2021) (Keller, P.J., concurring, joined by five other judges) ("The State's indictment does not charge a crime under the laws of the State of Texas . . . A mother choosing to abort her unborn child is not a crime under Texas law, so the defendant cannot be guilty of the offense of solicitation for soliciting such a crime."); *Liverman v. State*, 470 S.W.3d 831, 833 (Tex. Crim. App. 2015) ("We must determine whether a person commits the crime of securing the execution of documents by deception when he files a false mechanic's lien affidavit with the county clerk. We conclude that such a person does not commit that crime because he does not cause 'another' to 'execute' a document affecting property or pecuniary interests.").

[14] *See Ex parte Rodgers*, 598 S.W.3d 262, 265 (Tex. Crim. App. 2020) ([T]he State made a mistake in its allegation of the second jurisdictional prior DWI. It essentially alleged the same prior DWI conviction cause number twice."). But any error was harmless in *Rodgers* because there was another suitable prior conviction that could have been used. *Id.* at 264.

[15] Both "actual innocence" and "absolute innocence" are distinguishable from the concept of "legal innocence" that we rejected as an innocence claim but which does afford a non-innocence basis for relief. In a so-called "legal innocence" claim, the conduct the State intended to charge is an offense under a statute, but the statute is unconstitutional. *See Ex parte Fournier*, 473 S.W.3d 789 (Tex. Crim. App. 2015).

[16] *See supra* at nn.5, 14.

## 2. Rule of Lenity

Although the Court concludes that the statutes at issue here are unambiguous, it suggests in a footnote that, if the statutes were ambiguous, it could use the rule of lenity to resolve the ambiguity in Applicant's favor. But several statutory provisions, along with caselaw discussing them, suggest that the rule of lenity does not apply to the Penal Code and the Code of Criminal Procedure.[17] The Court's analysis of what the statutory language unambiguously says is convincing; there is no need to hedge here.

## 3. *Mable* / Involuntary Plea

In *Mable*, we granted relief to a defendant who pled guilty to possession of a controlled substance when later testing showed that the substance was not a controlled substance.[18] We explained:

> In this case, all parties involved, including the applicant, incorrectly believed the applicant had been in possession of drugs. This fact is crucial to this case, and while operating under such a misunderstanding, the applicant cannot be said to have entered his plea knowingly and intelligently.[19]

So *Mable* involved the parties incorrectly believing certain crucial facts that later testing disproved.

The Court's attempt to draw an analogy to *Mable* does not account for the different setting

---

[17] TEX. PENAL CODE § 1.05(a); TEX. CODE CRIM. PROC. art. 1.26; TEX. GOV'T CODE § 311.035(b), (c); *Diruzzo v. State*, 581 S.W.3d 788, 802 n.22 (Tex. Crim. App. 2019); *Delay v. State*, 465 S.W.3d 232, 251 & n.69 (Tex. Crim. App. 2014); *State v. Rhine*, 297 S.W.3d 301, 309 (Tex. Crim. App. 2009); *Ex parte Forward*, 258 S.W.3d 151, 154 n.19 (Tex. Crim. App. 2008); *State v. Johnson*, 219 S.W.3d 386, 388 & n.9 (Tex. Crim. App. 2007). It has also been suggested that the rule of lenity is a last resort, when statutory ambiguity remains insoluble after applying other tools of construction. *Diruzzo*, 581 S.W.3d at 802 n.202; *Wooden v. United States*, 142 S. Ct. 1063, 1075 (2022) (Kavanaugh, J., concurring).

[18] 443 S.W.3d at 130-31.

[19] *Id.* at 131.

of a case that involves the question of whether the defendant understood the law. In *Mable*, no one knew that the substance was not a controlled substance until the testing revealed that fact. But here, the relevant statutes were available to all the parties involved in the plea. And as the Court explains, the statutes were *unambiguous*. So the trial court, the prosecutor, and the defense attorney should have all understood what the statutes meant.

Applicant, as a person untrained in the law, would not necessarily have been expected to understand the law. That is what he had an attorney for. But in this case, we do not know what conversation Applicant had with his attorney. His trial attorney has not been asked to reveal what he told Applicant. We would have to remand for an affidavit or testimony from the attorney to get that information. Applicant has not even supplied an affidavit about what he claims his attorney told him. That makes sense, since Applicant is not raising an involuntary-plea claim.

The Court says that we know that all the participants misunderstood the law because the State and the trial court took the correct action and accepted responsibility by clarifying the error. But neither the trial court's findings nor the State's response makes the claim that Applicant was ignorant of the law or that his plea was involuntary. Instead, they just say that the prior conviction alleged was not a conviction and that Applicant has no prior conviction. That says nothing about what Applicant and defense counsel knew at the time of the plea.

And we cannot simply assume that there is no way Applicant would have pled guilty if he and his attorney had discussed the possibility that the firearm statute did not cover Applicant's conduct. Although his current case and the controlled-substance case do not appear to be part of a package deal, it is true that Applicant waived indictment in the current (firearm) case, proceeded on an information, pled guilty pursuant to a plea agreement, and received a five-year sentence that

would run concurrently with the five-year sentence in the controlled-substance case. It is also true that Applicant pled true to multiple violations of his deferred-adjudication probation in the controlled-substance case, so the record would support a conclusion that, regardless of whether he violated the firearm statute, he was going to be adjudicated and sentenced in the controlled-substance case.[20] And Applicant's sentence of five years in the controlled-substance case was the minimum period of incarceration he could have received for that first-degree felony.[21] So the possibility remains that the favorable plea deals could have caused Applicant to refrain from raising an issue about the applicability of the firearm statute.

It appears that part of the reason the Court relies on *Mable* is our prior decision in *Smith*. Addressing the same intersection of the firearm and deferred adjudication statutes as in this case, we said in *Smith* that "the proper construction of the [firearm] statute was unresolved and remains unclear."[22] *Smith* was correct that the proper construction was unresolved, in that we had not resolved it, but it was simply wrong when it said that the proper construction was unclear. As the Court explains today, the statutes at issue unambiguously provide that deferred adjudication is not a conviction (unless another statute says otherwise) and that a person commits the offense of felon-in-possession-of-a-firearm only if he had a prior felony conviction (with the firearm statute not

---

[20] In fact, in the initial plea proceedings for the controlled-substance offense, the trial judge warned Applicant that, if he later found a violation of the deferred-adjudication probation, he would *not* place him back on deferred adjudication or even place him on regular probation.

[21] *See* TEX. PENAL CODE § 12.32 (punishment range for first-degree felony of 5 to 99 years or life). The information for the controlled-substance offense charged the possession of methamphetamine of four grams or more but less than 200 grams, which was a first-degree felony. *See* TEX. HEALTH & SAFETY CODE §§ 481.102(6), 481.112(d).

[22] 296 S.W.3d at 81.

defining deferred adjudication as a conviction). *Smith* was wrong to rely on a different firearm statute, with no connection to the offense at issue, to suggest a lack of clarity.[23] In fact, *Ex parte Welch* had previously held, in the context of eligibility for probation, that it was clear from a plain reading of the deferred-adjudication statute that deferred adjudication did not count as a conviction.[24]

Moreover, under *Welch*, the lack of ambiguity in the statutes means counsel should have understood the correct interpretation and would have been ineffective for failing (if he did) to advise Applicant that deferred adjudication was not a conviction.[25] But *Smith* complicates matters, because it held that the law was "unsettled" by being unclear.[26] The law was not unsettled because the statutes were unambiguous, but this Court made the law unsettled by saying it was unsettled. And making the law unsettled creates a large, and possibly insurmountable, roadblock to an ineffective-assistance claim.[27]

But the Court was wrong to do that. Under *Boykin v. State*, "the Legislature is constitutionally entitled to expect that the Judiciary will faithfully follow the specific text that was

---

[23] *See id.* (discussing TEX. GOV'T CODE § 411.1711).

[24] 981 S.W.2d 183, 184-85 (Tex. Crim. App. 1998).

[25] *See* 981 S.W.2d at 185 ("Because this is the first case to consider the probation eligibility of a defendant discharged from deferred adjudication probation, we would usually be hesitant to find counsel's failure to anticipate a future decision sufficiently egregious to consider his performance at the time of trial ineffective. However, to be reasonably likely to render effective assistance to his client, a lawyer must be sufficiently abreast of developments in criminal law aspects implicated in the case at hand. In this instance, the idea that the order deferring adjudication and placing applicant on probation was not a conviction was not novel at the time of applicant's trial. Rather, it should have been evident from a plain reading of the deferred adjudication statute itself that applicant was not barred from receiving a probated sentence from a jury.").

[26] *See* 296 S.W.3d at 81.

[27] *See Ex parte Lane*, 670 S.W.3d 662, 671 (Tex. Crim. App. 2023).

adopted."[28] This Court should not have said that the text of a statute was ambiguous when it was not.[29] Having done so, the Court bears the responsibility for any distorting effects of its decision, if a defendant can show harm. When the attorney is not at fault, but some other aspect of the system is responsible for depriving the defendant of a right, than relief can be granted on a "breakdown of the system" theory.[30] In an appropriate case, bad precedent that contravenes express statutory language could create a distortion in the system that prejudices a defendant and requires the granting of relief. Ultimately, I do not think we need to consider that issue here, because we can grant relief on the theory of absolute innocence discussed earlier. But if the Court wants to grant relief on the basis of an involuntary plea, it would be better to recognize the mistake in *Smith* and fix it than to expand *Mable* to a situation very different from its facts.

I concur in the Court's judgment.

Filed: June 26, 2024

Publish

---

[28] 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

[29] The Court could have simply avoided commenting on the meaning of the text and held that the attorney did not need to examine it thoroughly because of the concurrent sentencing plea deal. *See Smith*, 296 S.W.3d at 81 (relying in part on the fact that the plea was part of an agreement for concurrent sentencing with other cases).

[30] *Ex parte Riley*, 193 S.W.3d 900, 902 (Tex. Crim. App. 2006).